## Case No. 1,064.

### BARSTOW v. PECKHAM et al.

### [5 N. B. R. (1873,) 72.]

### District Court, D. Rhode Island.

BANKRUPTCY—PRIORITIES—JURISDICTION—PETITION.

[In bankruptcy proceedings it was adjudged that a certain creditor, by virtue of a mortgage to him, had a claim on the estate superior to that of the assignee, and the equity of redemption was ordered to be sold by the latter. Another creditor then filed a petition to the judge, setting up certain prior, but unrecorded, mortgages and bill of sale, also an attachment issued thereon before the bankruptcy proceedings, and praying that he be adjudged to have the superior claim on the property covered thereby. Held, that the petition should be dismissed for want of jurisdiction, the petitioner's remedy being by action at law or suit in equity.]

[Distinguished in Ferguson v. Peckham, Case No. 4,741. Cited in Re Marter, Case No. 9,143. Contra, see Norris' Case, Case No. 10,304.]

KNOWLES, District Judge. The respondents move for a dismissal of the petition of Barstow, as not within this court's jurisdiction, the movers contending that either by formal suit in equity or regular action at law should the petitioner have proceeded against them, and not, as he has done, by simple petition, invoking summary action on the part of the district judge, subject only to the revisory power of the circuit judge at chambers or in open court; the parties, of course, being thus precluded access to the circuit court as appellants or plaintiffs in error, besides being deprived of all benefit from the rules of evidence and from the established forms and modes of procedure, which parties to suits and actions are accustomed and required to respect and follow.

The question presented arises upon a state of facts somewhat peculiar, thus: One John Moore upon his petition, filed December second, eighteen hundred and sixty-eight, was on the twenty-ninth of December adjudged a bankrupt. It appearing from his schedules that the bulk of his debts were equally the debts of a copartner (one Joshua S. Drowne,) contracted on the firm name of Drowne & Moore, such proceedings were had under this court's orders, that the firm of Drowne & Moore was declared bankrupt, and on the seventeenth of May, eighteen hundred and sixty-nine, an assignment of their property was made to S. W. Peckham. The property consisted almost exclusively of the tools, machinery, implements and stock of a silver spoon manufactory, and a jeweler's workshop, which, in January, eighteen hundred and sixty-nine, several creditors of the firm (Barstow among them) had attached on writs from a state court, returnable in March, eighteen hundred and sixty-nine. This property the assignee found in the custody of the attaching officer, and therefore, on the twenty-sixth of May applied to the court for an order dissolving those attachments and also

for license to sell the said property free from a mortgage incumbrance conceded by him to exist thereon in favor of Mary S. Drowne of Brooklyn, New York, wife of said Joshua, for the sum of five thousand dollars, due by promissory note of the firm, dated July thirteenth, eighteen hundred and sixty-eight, (the date of the mortgage) and recorded in Providence registry, October fifteenth, eighteen hundred and sixty-eight. Upon the first of these applications the court ordered "that the officer deliver the attached property to S. W. Peckham, assignee, and that said assignee, from the proceeds thereof, when sold, pay said officer his reasonable costs and charges on the attachments and for keeping said property." Upon the second, a notice was ordered to issue to said Mary F. Drowne, to appear on the second of June, to show cause against said application, on which day she made appearance filing her "petition in equity" wherein she set forth her claim to the property under her said mortgage, representing that said Peckham had taken possession of the property and refused to surrender the same to her, and prayed that "said assignee be directed to surrender possession thereof to her, to be disposed of under her said mortgage according to law."

After a full hearing upon this petition of Mrs. Drowne (as also it is presumable upon the assignee's application for leave to sell,) a decree of the court was entered July fourteenth, eighteen hundred and sixty-nine, as follows:—

"I. That the petitioner has a lien upon the property described in and referred to in the petition, superior to the claims of the respondent subject to any equities the respondent may have for payments made or liabilities incurred in relation to said property while in his possession or otherwise.

"II. That the respondent .may sell the equity of redemption in said property, at such time and in such manner as he may deem best for the interest of the general creditors, and may, at his direction, retain possession thereof until sale be made.

"III. That all questions of costs and of expenses paid or liability incurred in acquiring, holding and delivering over said property be and the same are hereby reserved for further consideration and disposition by the court."

At the hearing upon this petition certain of the attaching creditors (Barstow among them) as well as the assignee were represented by counsel and fully heard. Under this decree the assignee, within fifteen days, advertised a sale of his equity of redemption in the property by auction, to take place on the fourth of August, eighteen hundred and sixty-nine; whereupon, on the twenty-eighth of July, said Barstow presented to the judge at chambers his petition (the subject of the motion), in which he set forth claims to said property in virtue of certain unrecorded mortgages and bills of sale of earlier date

than the said mortgage to Sarah F. Drowne, and in virtue of his attachment of January, eighteen hundred and sixty-nine, and prays, among other things, that the court will adjudge his claims upon said property to be paramount in whole or in part to the claim of Mrs. Drowne; that a portion of the property be delivered to him; that another portion be restored to the attaching officer; that yet another portion be sold, and that "meanwhile the assignee be enjoined from further complicating the title of said property by any sale of the equity of redemption thereof." The injunction prayed for was at once granted, the assignee not opposing, and a citation ordered to issue to said Peckham, and Sarah F. Drowne and her husband to appear before the court on the fourth of August, to show cause against the petitioner. The injunction to the assignee embodied a provision that he might move its dissolution at any time on giving one day's notice to Barstow or his solicitor of record.

The several respondents entered appearance on the fourth of August, Peckham filing his answer on the eighteenth of August, the other respondents (by consent) deferring the filing of theirs until September seventh, eighteen hundred and sixty-nine. It appears from statements of counsel that before the filing of these answers, the propriety or legality of proceeding in a matter of this kind by petition simply was questioned in some quarters, and that the respondents proposed that by consent the aforesaid petition and answers be formally converted into and treated as equity pleadings to all intents and purposes, and that the petitioner declined to accede to this proposal. Also it appears that both parties afterwards manifested a desire to speed the cause as it stood by taking the needed testimony; and more than this, that in January or February, eighteen hundred and seventy, the respondents repeated their offer to the petitioner, expecting a change in the form of the pleadings, coupled, however, with a condition with which unfortunately, in part at least from accident and mischance, the petitioner failed to comply. At last the petitioner declaring or omitting to prepare for a trial of the petition, the respondents, on the twenty-ninth of March, eighteen hundred and seventy, filed the now pending motion to dismiss the petition for want of jurisdiction. As already stated, the assignee was, on the twenty-eighth of July, eighteen hundred and sixty-nine, forbidden to sell as authorized by the decree of the fourteenth of July. The property meanwhile remained in his custody deteriorating from disuse and subjecting itself or some party, or the assignee himself, to storage expenses of not less than seventy-five cents per diem, in view of which facts he early in March, eighteen hundred and seventy, filed his ' petition to the court praying leave to make sale of the property free from all incumbrances, the proceeds thereof in the reg-

istry to be subject to the claims of the antagonizing mortgagees and attaching creditors. Upon this petition of the assignee Barstow was fully heard, he claiming that the property should be sold in Providence in parcels to suit purchasers; the respondents, Drowne and wife and the majority in interest of ascertained creditors, claiming, firstly, That only the assignee's equity of redemption be sold, and secondly, That if the property itself specifically was to be sold, it should be in bulk as an entirety, and in New York rather than in Providence. Prior to any decision upon this question of sale, the respondents filed this motion to dismiss the petition of Barstow, and thus in the most effectual mode possible, dissolve the injunction of which the assignee complained. Upon the motion to dismiss, no hearing was asked by either party or ordered by the court until the fifth of October, eighteen hundred and seventy, for the reason that his honor, Justice Clifford, had taken under advisement in June, eighteen hundred and sixty-nine, the case of Knight v. Cheney, [Case No. 7,-883,] in deciding which it was confidently anticipated that he would give an authoritative exposition of those sections of the bankrupt act upon an assumed construction of which this motion to dismiss is based. The desired opinion of his honor, owing to the pressure of judicial duties of more importance he has not yet committed to paper, but of its tenor and import the parties and counsel in this cause, as well as those in Knight v. Cheney were fully informed by an oral communication at the September term, eighteen hundred and seventy, of the circuit court when its judgment in that cause was announced.

Any further delay in the disposal of the motion is earnestly deprecated by the respondents, and with reason as it seems to me. I am unable to concur with the learned and astute counsel of the petitioner, that until the opinion in writing of Justice Clifford shall be received, it is advisable to suspend judgment upon this motion. It may happen, as he suggests, that that opinion will contain some qualifying remark excepting the case at bar from the scope of the general principles he orally announced. This is possible, but is, in my judgment, so improbable that I cannot, in view of it, further delay action upon the question presented. That question, fully enough stated in my opening paragraph above, is not now a novel one. When first passed upon by a justice of the supreme court, (Justice Swayne,) his exposition of the law overruling a decision of the judge of the northern district of Ohio, was in harmony with the argument and positions of the learned counsel of the petitioner. In re Neal, [Case No. 1,406.] Subsequently, however, opinions and rulings directly adverse to those of Justice Swayne, have been given for the guidance of the profession by two of his associates of the supreme bench, by Chief Justice Chase, in Re Alexander, [Id. 160,] and by Justice Nelson, in Re Kerosene Oil Co., [Id. 10,206,] and in Re Bonesteel, [Id. 1,627,] whose rulings in this regard have been followed by Judge Blatchford in Re Ballou, [Id. 818.] Of the ruling of Justice Clifford upon this point in Knight v. Cheney, [supra,] in this district in September last, it is sufficient to say that I understood them to be in full accord with those of Justices Chase and Nelson. Such being the ruling of the judge of this circuit, sustained by two at least of his associates, I can but regard it as authoritative, and accordingly sustain the motion to dismiss.

In the analogous case of Knight v. Cheney, Justice Clifford gave the petitioner leave to convert his petition into a bill in equity if he saw fit, but admonished the parties that the only advantage to be gained by so doing would be a saving of the service of a new subpoena, as the answers filed and the testimony taken (if any) could not be used but by consent in the prosecution of the suit in its amended form. In thus ordering he was understood to exercise a discretionary power, and in that case it doubtless was wisely exercised. In the case at bar, however, I see no occasion for qualifying the order of dismissal. On the contrary, it seems desirable that the assignee and other parties be placed in the same position in which they were under the decree of my predecessor of July fourteenth, eighteen hundred and sixty-nine, before the filing of the petition of Barstow. That decree, for aught that appears, was satisfactory to all parties interested other than Mr. Barstow. The respective and relative rights of the assignee and of Mrs. Drowne in the property were by that decree defined and settled satisfactorily to them and to the court. Mr. Barstow, so far as is shown, was in no sense a party to those proceedings otherwise than as a creditor of the firm, who had not seen fit to prove his claim, and of course is not bound by the court's adjudication. His rights in the property, however acquired or held, he is of course entitled to protect and enforce as he shall be advised, now being authoritatively informed that by an action at law or suit in equity, and not by a simple petition to the judge, is he to seek redress and relief.

I will add as not impertinent in this connection, that the thirteenth general rule, as amended, contains provisions which appear to be designed as well as suited to relieve claimants and assignees from some of the embarrassments, delays and expenditures to which the parties in this cause have been subjected. Whether in that rule is to be found anything of importance to the parties at this stage of this cause is for them, not the court, to inquire and determine.

The petition is dismissed for want of jurisdiction, and as a consequence, the injunction upon the assignee of July twenty-eighth, eighteen hundred and sixty-nine, ancillary to the petition, is dissolved.